FILED
U.S DISTRICT COURT

2006 JUL 28  P 1: 54

DISTRICT OF UTAH

BY: _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | MEMORANDUM DECISION |
| Plaintiff, | : | AND ORDER DENYING |
| vs. | : | DEFENDANT'S MOTION |
| | : | TO SUPPRESS |
| | : | |
| FELIPE HERNANDEZ-VELASCO, | : | |
| | : | Case No. 2:06-CR-0075 DKW |
| Defendant. | : | |

This matter is before the court on Defendant Filipe Hernandez-Velasco's Motion to Suppress. Specifically, Mr. Velasco seeks to suppress all evidence obtained as the result of the stop and detention of a vehicle he was driving on January 22, 2006.

An evidentiary hearing on the Motion to Suppress was held on May 30, 2006. At the hearing, defendant was represented by Catherine Conklin. The Government was represented by Adam S. Elggren. At the conclusion of the hearing, the court ordered a transcript as well as supplemental briefing from the parties. After thorough review and consideration of the pleadings submitted by the parties and the testimony presented at the evidentiary hearing, the court enters the following memorandum decision and order.

1

## BACKGROUND

The court finds the relevant facts as follows.[1] Trooper Anthony Carrubba is a 6-year veteran of the Utah Highway Patrol (UHP). On January 22, 2006, Trooper Carrubba was on patrol in Washington County, Utah. (Tr. at 7.) At approximately 10:20 a.m., Trooper Carrubba was following a white, extended-cab Dodge Dakota pickup truck, with Indiana plates, traveling northbound on I-15 near St. George, Utah. (Tr. at 7, 8.)

Using the laptop computer in his patrol car, Trooper Carrubba decided to run a routine check of the license plate. Trooper Carrubba testified that he runs such checks 10-20 times per day during patrol, and that the primary purposes of such checks are to identify vehicles that may be stolen and to verify the validity of the registration and insurance on those vehicles. (Tr. at 7-8.) Trooper Carrubba testified that he checks vehicles with out-of-state plates more frequently because he has learned to recognize false or mis-marked Utah plates. (Tr. at 31.) Trooper Carrubba testified that the equipment in his patrol car had been checked recently and was in working order. (Tr. at 44-45.)[2]

After entering the Indiana license plate into his laptop computer, Trooper Carrubba received the prompt "not on file." (Tr. at 8.) Carrubba understood that response to mean that the vehicle was not properly registered. (Tr. at 35.) Trooper Carrubba explained that the response "not on file" could mean that the vehicle had never been registered, was improperly registered, is not currently registered, or it could mean that the vehicle was stolen and that the plate belonged

---

[1] Reference to the transcript of the evidentiary hearing conducted on May 30, 2006, will be cited as "Tr. at ___."

[2] A video recording of the incident was captured by a camera mounted in Trooper Carrubba's patrol car. Reference to this video will be cited as "Govt's Ex. 1."

2

to another vehicle.[3] (Tr. at 8, 35.) Trooper Carrubba also acknowledged that "not on file" could mean that the DMV had made a mistake when entering the information.[4] (Tr. at 8, 35.)

Trooper Carrubba testified that of the 10-20 computer checks he does each day he receives "very few, if any" such "not on file" responses. (Tr. at 45.) He further testified that "if they do come back with that prompt, we will stop the vehicle every time." (Tr. at 45.) Trooper Carrubba testified that when the vehicle registration for the white Dodge Dakota came back as "not on file," he felt that he had a duty to determine whether there was a problem with the vehicle. (Tr. at 45.)

Because of the "not on file" response to his computer inquiry, Trooper Carrubba initiated a traffic stop of the truck at approximately mile marker 12. (Tr. at 9.) After stopping the vehicle, he made contact with the driver at the driver's side door. (Tr. at 9.) Trooper Carrubba testified that as he approached the driver's side of the vehicle he did not stop to check the sticker on the license plate to see if it was current. (Tr. at 9, 32, 38.) Trooper Carrubba said that the majority of the time, when a vehicle is stopped for a registration problem, the person in the vehicle can produce the paperwork to clear up any discrepancies from the computer results. (Tr. at 9, 38.)

Upon approaching the vehicle, Carrubba observed two occupants, including the defendant, Felipe Hernandez-Velasco, who was driving. (Tr. at 9.) Trooper Carrubba told the defendant why he had been stopped and asked for his license and registration. (Tr. at 9-10;

---

[3]Trooper Carrubba testified that the N.C.I.C., a separate computer system, indicated that the license plate was not listed as stolen. (Tr. at 36.)

[4]Trooper Carrubba testified that he believed that when he entered the truck's information into his laptop computer the information was checked with the Indiana Department of Motor Vehicles computer database. (Tr. at 8, 34.)

3

Govt's Ex. 1 at 11:17:50.) The defendant did not provide a driver's license or a registration document. (Tr. at 10.) Instead, the defendant provided what appeared to be a Mexican military I.D. and an insurance application for the vehicle in a third party's name. (Tr. at 10.) The passenger also lacked a valid driver's license. (Tr. at 11.) Trooper Carrubba testified that under these circumstances, with neither party possessing a valid driver's license, the vehicle would have been impounded and an inventory search conducted. (Tr. at 11-12.) The purposes of an inventory search are to document the items in the vehicle as well as the vehicle's condition. (Tr. at 12, 13.)

Trooper Carrubba returned to his patrol vehicle and ran a check on the defendant and his passenger. (Govt's Ex. 1 at 11:20:40.) He found that there were no warrants for either, but that there were also no records to suggest that either had a valid driver's license. (Tr. at 17.) Trooper Carrubba returned to the defendant's vehicle and engaged the defendant in conversation. (Tr. at 17-18.)

Trooper Carrubba ultimately asked the defendant for permission to search the truck and the defendant consented. (Tr. at 18-19; Govt's Ex. 1 at 11:33:30.) During the course of the search, Trooper Carrubba became suspicious that contraband may have been hidden in the vehicle's gas tank. Using a fiber-optic scope, the troopers[5] observed what appeared to be plastic baggies in the gas tank. A thorough search of the vehicle revealed that 18 baggies were concealed in the truck's gas tank. (Tr. at 28.) The substances within the baggies field tested positive for narcotics. (Tr. at 28.) Fourteen of the baggies contained one pound each of

---

[5]Trooper Nick Bowles, a member of the UHP's drug interdiction team, arrived to provide backup. (Tr. at 21; Govt's Ex. 1 at 11:52:30.)

4

methamphetamine, three baggies contained one pound each of cocaine, and one baggie contained extra baggies. (Tr. at 28.) The defendant and his passenger were arrested and read their <u>Miranda</u> rights. (Tr. at 29.)

## DISCUSSION

I.      <u>Standing</u>

As an initial matter, the government argues that the defendant lacks standing to contest the search of the truck. The Supreme Court has recognized that the issue of standing is invariably intertwined with substantive Fourth Amendment privacy rights analysis. <u>See</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 139-40 (1978). To determine whether a search has violated the Fourth Amendment rights of a defendant, the court must examine two factors: whether the defendant manifested a subjective expectation of privacy in the area searched and whether society would recognize that expectation as objectively reasonable. <u>United States v. Martinez</u>, 983 F.2d 968, 972 (10th Cir. 1992), <u>cert. denied</u>, <u>Arango v. United States</u>, 507 U.S. 1056 (1993).

In the context of vehicle searches, the Tenth Circuit has provided that to contest a search, the defendant bears the burden of showing that he had a "legitimate possessory interest in or lawful control over the car." <u>United States v. Hocker</u>, 333 F.3d 1206, 1209 (10th Cir. 2003). Where the driver of the vehicle is not the registered owner, he bears the burden of establishing that "he gained possession from the owner or someone with authority to grant possession." <u>United States v. Arango</u>, 912 F.2d 441, 444-46 (10th Cir. 1990), <u>cert. denied</u>, 499 U.S. 924 (1991).

In this case, the defendant has failed to come forward with any evidence that he either

5

owned or had lawful possession of the truck. No registration for the vehicle was ever found by the officer, and the sole document relating to the vehicle produced at the scene–an insurance form–was in the name of a third party. Given these facts, the court finds that the defendant has failed to establish a reasonable expectation of privacy in the truck. Accordingly, the defendant lacks standing to challenge the search of the truck.

Nonetheless, the defendant may challenge his own seizure. Passenger standing to directly challenge a vehicle search is distinguished from passenger standing to seek suppression of evidence discovered in a vehicle as the fruit of the unlawful stop, detention, or arrest. United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996). If the physical evidence found in the vehicle was the fruit of defendant's unlawful detention, it must be suppressed. See id. This requires a two-part inquiry: first, whether the defendant was unlawfully detained, and second, whether the discovered evidence was the fruit of that unlawful detention. United States v. Miller, 84 F.3d 1244, 1250 (10th Cir.), cert. denied, Hicks v. United States, 519 U.S. 985 (1996). Only if both of these questions are answered in the affirmative will the physical evidence found in the vehicle be suppressed.

II. The Traffic Stop

Having determined that the defendant has standing to challenge his own detention, the court turns it's attention to what appears to be the sole issue in this case: whether Trooper Carrubba had reasonable suspicion to justify stopping the defendant's vehicle. (See Def's Mem. In Support at 3-6.) It is the defendant's position that the information Trooper Carrubba received from his laptop computer was "vague and ambiguous"and therefore insufficient to create a

6

reasonable articulable suspicion of a traffic violation. Accordingly, the defendant claims that because the initial stop and detention were illegal, the evidence seized is inadmissible as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 484 (1963).

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." United States v. Holt, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (internal quotation marks omitted). "A routine traffic stop is analogous to an investigative detention and is analyzed under the principles stated in Terry v. Ohio, 392 U.S. 1 (1968). Like any Terry stop, analyzing a traffic stop involves a dual inquiry. First, the court must consider whether the officer's action was justified at its inception, and second, whether it was reasonably related in scope to the circumstances which justified the interference in the first place. See Terry, 392 U.S. at 20.

### Step 1: Was the Stop Justified at its Inception?

The court must first determine whether Trooper Carrubba's action was justified at its inception. In the context of a traffic stop, the Tenth Circuit has stated: "Such a stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1996). This analysis turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time. Maryland v. Macon, 472 U.S. 463, 470-71 (1985).

In the case at bar, Officer Carrubba lawfully initiated a computer check on the license

7

plate of defendant's vehicle.[6] The purposes of the computer inquiry were to verify the validity of the registration and insurance, and to make sure the vehicle was not stolen. (Tr. at 7-8.) Once the defendant's plate came back as "not on file," Trooper Carrubba reasonably believed there was a problem with the vehicle's registration. Utah law explicitly provides that motor vehicles must be registered before they can be operated, Utah Code Ann. § 41-1a-201, and Trooper Carrubba testified that upon receiving the information, he felt an obligation to address the problem. (Tr. at 45.)[7]

While recognizing that computer information is not flawless, courts have routinely concluded that officers may reasonably rely on such information as justification for stopping a vehicle. See, e.g., United States v. Varela, Slip Copy, 2006 WL 120263 (D. Utah Jan. 17, 2006) (finding that officer had reasonable suspicion sufficient to stop vehicle and ask driver for registration documents where computer search indicated that the registration had expired,

---

[6]As an initial matter, the court notes that Trooper Carrubba did not intrude on defendant's rights when he initiated the computer search of defendant's license plate number. The license plate was in full public view as the vehicle traveled on the highway. The observation and inquiry regarding the license plate number did not constitute a search within the meaning of the Fourth Amendment because the defendant had no reasonable expectation of privacy with respect to the vehicle's license plate number. See Katz v. United States, 389 U.S. 347 (1967) (holding that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection"); See New York v. Class, 475 U.S. 106 (1986) (holding that there is no reasonable expectation of privacy in a vehicle identification number); United States v. Hensel, 699 F.2d 18 (1st Cir.) (holding that viewing a license plate on a parked car was not a search for Fourth Amendment purposes), cert. denied, 461 U.S. 958 (1983); United States v. George, 971 F.2d 1113 (4th Cir. 1992) (providing that "one does not have a reasonable expectation of privacy in the visible exterior parts of an automobile that travels the public roads and highways")).

[7]Moreover, Trooper Carrubba testified that in his experience, if he received a "not on file" response to a computer inquiry he would always stop the vehicle to clarify any discrepancies between the computer and the paperwork within the vehicle. (Tr. at 45.)

8

notwithstanding the fact that sticker on license plate showed registration was current); see also, e.g., United States v. Miguel, 86 Fed. Appx. 342, 2004 WL 103124 (9th Cir. Jan. 21, 2004) (concluding that police had reasonable suspicion required for stop of defendant's vehicle, given the belief, although possibly mistaken, that defendant was driving an unregistered vehicle in violation of state law; any mistake regarding expiration of registration would have been a mistake of fact based on a computer error); United States v. White, 1999 WL 1939263 (M.D.N.C. Jan. 14, 1999) (concluding that "not on file" response to officer's computer inquiry regarding vehicle registration provided reasonable suspicion of violation of state law), aff'd 201 F.3d 439 (4th Cir. 1999).

For example, in United States v. Varela, Slip Copy, 2006 WL 120263 (D. Utah Jan 17, 2006), a police officer, using his laptop computer, initiated a license plate check of a vehicle. The state computer used by the Salt Lake City Police Department showed that the vehicle's registration had expired. Based on this information, the officer initiated a traffic stop. After stopping the vehicle, the officer noticed a sticker on the rear license plate that showed a current registration. Nonetheless, the officer approached the vehicle and asked the driver for his license and registration. Id. at *2. The paper registration revealed that the sticker was legitimate and the registration was current.

In denying the defendant's motion to suppress, the court in Varela reasoned that, despite the current registration sticker, the officer "continued to have reasonable suspicion that the registration had expired because he had already found that the state computer showed the registration to be expired." Id. at *3. The court concluded: "It was reasonable to rely on the state database in determining to initiate the stop. There was no evidence that [the officer] had

9

knowledge that the state computer could lag behind by up to two days. Thus, [the officer] had a reasonable suspicion that a traffic offense had occurred and that a stop should be made." Id. at *3

Like the court in Varela, this court is of the opinion that, upon receiving the computer response "not on file," Trooper Carrubba had reasonable articulable suspicion that a traffic violation was occurring. Accordingly, Trooper Carrubba lawfully stopped the defendant's vehicle.

### Step 2: Was the Scope of the Detention Reasonable?

The second step in evaluating the Fourth Amendment implications of a traffic stop is whether the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place. Terry, 392 U.S. at 20. In the case at bar, the defendant asserts that "whatever minimal objective suspicion Officer Carrubba might have had as a result of the computer inquiry should have been easily resolved by the presence of a clearly visible 2006 registration sticker on the license plate." (Def's Mem. In Support at 5.)

Defendant's argument is similar to an argument that was accepted by the Tenth Circuit in United States v. McSwain, 29 F.3d 558 (1994). In McSwain, an officer stopped a car because he believed that the temporary registration tag was invalid. After stopping the car, but before making contact with the driver, the officer realized that the tag was valid. Id. at 560. According to the Tenth Circuit, under these circumstances all that the officer would have been allowed to do would have been to approach the driver to explain the mistake he had made. Id. at 561. However, the officer in McSwain went further, asking for the defendant's license and registration. The Tenth Circuit held that the continued detention was illegal because the officer's

10

reasonable suspicion regarding the validity of the defendant's temporary registration sticker was completely dispelled prior to the time he questioned the defendant and requested the documentation. Id. The court in McSwain concluded that, because the officer did not have objectively reasonable articulable suspicion that illegal activity had occurred or was occurring, the officer's actions exceeded the limits of a lawful investigative detention and violated the Fourth Amendment. McSwain, 29 F.3d at 561-62.

However, unlike the circumstances in McSwain, where the officer's reasonable suspicion was completely dispelled prior to contacting the driver, in this case Trooper Carrubba continued to have a reasonable suspicion of illegal activity at the time he asked the defendant to provide his license and registration. From the outset, Trooper Carrubba was in possession of information indicating that the vehicle registration was "not on file." Under these circumstances, even if Trooper Carrubba had observed the 2006 registration sticker on the license plate prior to speaking with the defendant, that alone would not have reconciled the contradictory information he had already received via his computer.

Moreover, the Tenth Circuit has made clear that a police officer is not required to use the "least intrusive means" in a stop or seizure case, only that he use "reasonable ones." United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994). In this case, given what was at best contradictory information, it was reasonable for Trooper Carrubba to approach the driver and request the paper documentation in order to confirm or dispel his suspicion regarding the vehicle's registration. See United States v. Varela, Slip Copy, 2006 WL 120263 (D. Utah Jan. 17, 2006) (concluding that officer, who stopped vehicle based on computer information indicating lack of proper registration, acted reasonably in continuing to approach driver to

11

request documentation to review and verify paper registration in spite of what appeared to be a current registration sticker on the license plate). Accordingly, the court concludes that, having lawfully stopped the vehicle, Trooper Carrubba acted reasonably and within the scope of the initial detention when he approached the driver and asked for the paper registration

Having determined that the defendant was not unlawfully detained, IT IS HEREBY ORDERED that Defendant's Motion to Suppress is DENIED.

DATED this 28 day of July, 2006.

BY THE COURT:

*David K Winder*

David K. Winder
Senior District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that on the __28__ day of July, 2006, I served copies of the foregoing by United States mail, postage prepaid, and/or by inter-office delivery, addressed as follows:

Adam Elggren
185 South State Street, Suite 400
Salt Lake City, Utah 84111

Deirdre A. Gorman
205 26th Street, Suite 32
Ogden, Utah 84401

_____
Secretary